24175

The STATE, Respondent v. Tony C. WYATT, Appellant.

(453 S.E. (2d) 890)

Supreme Court

*Asst. Appellate Defender Robert M. Dudek,* of S.C. Office of *Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr., Asst. Atty. Gen. Rakale Buchanan Smith,* Columbia, and *Sol. W. Townes Jones, IV,* Greenwood, *for respondent.*

Heard Oct. 5, 1994.

Decided Jan. 9, 1995.

FINNEY, Justice:

Appellant was convicted of voluntary manslaughter, assault and battery of a high and aggravated nature (ABHAN), and carrying a pistol unlawfully. He received concurrent sentences of sixteen years (manslaughter), ten years (ABHAN), and one year (unlawful pistol). On appeal, he raises three evidentiary issues. We affirm.

Appellant's convictions arose from a shooting incident at a Laurens County automobile racetrack. At the track that evening, appellant and his estranged wife Wendi got into an argument. Witnesses presented by the State testified that appellant hit Wendi numerous times during the argument. Witnesses presented by the defense, including appellant and Wendi, testified that he did not actually hit Wendi, but that he simply "swatted" at her, brushing her hair.

It is uncontradicted that after the argument between appellant and Wendi, appellant went and sat in his car. Chris Rhodes, the ABHAN victim, approached appellant and told appellant that if he wanted to hit someone, to hit him instead of a woman. Appellant and some of his witnesses testified that Rhodes hit appellant, although Rhodes and other witnesses testified that Rhodes did not hit him. During the confrontation, appellant pulled a gun and shot Rhodes, wounding him.

As appellant was attempting to drive away, C.B. Cape reached into appellant's car. According to the State's witnesses, Cape was attempting to remove appellant's keys. According to appellant and his witnesses, Cape was fighting with appellant and attempting to remove him from the car. Appellant shot and killed Cape.

At least fifteen minutes passed between the end of the argument between Wendi and appellant and the first shooting. There was uncontroverted evidence that when Cape approached appellant's car, it was surrounded by a hostile crowd. Appellant's theory was that he acted in self-defense.

Appellant first argues the trial court committed reversible error in allowing the solicitor to cross-examine Wendi about the ground upon which she once sought a divorce from appellant. While we agree there was error, appellant cannot show sufficient prejudice from it to warrant reversal. *State v. Parker*, 315 S.C. 230, 433 S.E. (2d) 831 (1993)

(convictions will not be set aside for insubstantial errors not affecting the result).

It is undisputed that Wendi and appellant had a heated argument over his visitation with their children and her relationship with Kenneth Smalls. Both appellant and Wendi maintained he did not hit her in the face during the argument as the State's witnesses had testified, but just swatted at her and hit her hair. On cross-examination, Wendi testified she knew how it felt to "really be hit," and admitted she had been hit "countless times." The solicitor followed up these admissions by asking Wendi what the current ground for her pending divorce action against appellant was (one year's separation). He then asked her to read from the original divorce petition. Appellant's objection that the divorce was irrelevant to these criminal charges was overruled, and Wendi admitted she had originally sought a divorce on the ground of physical cruelty.

Evidence is relevant if it tends to make more or less probable a fact in issue. *State v. Schmidt*, 288 S.C. 301, 342 S.E. (2d) 401 (1986). Whether or not appellant actually hit Wendi that night or any other time was *not* in issue; rather, the issue was appellant's state of mind, malice, sudden heat of passion, or self-defense, when Rhodes and Cape were shot. The fact that Wendi once sought a divorce on the ground of physical cruelty was irrelevant. *State v. Schmidt, supra.*

■ While the evidence of physical cruelty was wrongfully admitted, appellant cannot demonstrate sufficient prejudice to warrant reversal. First, Wendi had already testified she knew how it felt to be hit countless times, an admission which, in context, suggested appellant had been the perpetrator of the blows. Thus, any error in admitting the grounds for divorce was harmless because it was merely cumulative to other evidence in the record. *State v. Blackburn*, 271 S.C. 324, 247 S.E. (2d) 334 (1978). Second, the jury, by rejecting murder and ABIK, found appellant had not acted with malice but upon provocation. The verdict shows the jury properly focused on appellant's state of mind at the time of the shootings, and not on whether appellant was a wife-beater. Appellant has not met his burden of showing the jury was influenced by this improper evidence. *State v. Parker, supra.*

Shortly after the shootings, appellant turned himself in to the police. Two officers interviewed appellant about the shootings. Prior to the interview, one officer (Lynch) read appellant his *Miranda* rights and appellant signed a waiver of rights form. Thereafter, appellant gave an oral confession. Lynch wrote the statement down verbatim as appellant gave it. After appellant was finished, Lynch read the statement back to him and asked appellant if he wanted to change anything or add anything. Appellant stated that he did not. Lynch did not ask appellant to sign the statement. Appellant presented no evidence at either the suppression hearing or before the jury to contradict this version of events.

At trial, the solicitor asked Lynch to read his written transcript of appellant's oral statement. Appellant objected to Lynch reading the written version of the statement on the grounds that it was not appellant's statement since it was not signed. He also contended that it was not admissible as Lynch's past recollection recorded because Lynch had some independent recollection of the statement's contents. The trial judge ruled that the written transcript could not be placed into evidence but that Lynch could publish it to the jury.

Appellant contends that the trial judge's ruling was error. We disagree.

A defendant's voluntary custodial statement made after a waiver of *Miranda* rights is admissible. *State v. Washington*, 296 S.C. 54, 370 S.E. (2d) 611 (1988). We have never required the defendant's signature as a condition of a written statement's admissibility and we decline to do so here. The absence of appellant's signature is not legally significant. See 23 C.J.S. *Criminal Law* § 880 (1989). Since the statement was admissible under *Washington, supra,* we do not reach the past recollection recorded issue. *Cf. State v. Scott,* 269 S.C. 438, 237 S.E. (2d) 886 (1977) (officer allowed to refresh recollection from his verbatim notes of appellant's statement where appellant did not sign and denied making any statement).

In this statement, appellant said that after the shooting he went looking for Kenneth Smalls, Wendi's friend, and that appellant "did not know what would have happened if [he] had found Smalls that night." Appellant objected to this portion of the statement being read to the

jury on the ground it was irrelevant. The judge overruled the objection.

The admission of evidence in a criminal prosecution is within the discretion of the trial judge and his ruling will not be disturbed on appeal unless an abuse of that discretion is shown. *State v. Moultrie*, 283 S.C. 352, 322 S.E. (2d) 663 (1984). As noted above, the only real issue here was appellant's state of mind at the time of the shootings. The fact that appellant was still angry about Smalls and went looking for him more than an hour after his argument with Wendi is evidence of appellant's state of mind at the time of the intervening shootings. The evidence was relevant and properly admitted. *State v. Schmidt, supra.*

Appellant's convictions and sentences are

Affirmed.

CHANDLER, C.J., and TOAL, MOORE and WALLER, JJ., concur.