545 S.E.2d 282

The STATE, Respondent,

v.

Charles IRICK, Appellant.

No. 25276.

Supreme Court of South Carolina.

Heard Feb. 6, 2001.

Decided April 2, 2001.

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; Solicitor Walter M. Bailey, of Summerville, all for respondent.

TOAL, Chief Justice:

The jury found Charles Irick ("Irick") guilty but mentally ill ("GBMI") of murder and sentenced him to life imprisonment. This appeal follows.

## FACTUAL/PROCEDURAL BACKGROUND

On June 8, 1995, Orangeburg County Sheriff's Deputy Cecil Carson ("Carson") was "flagged down" in Holly Hill by a driver in a car. The driver told Carson someone had been shot and was lying in the street six blocks away. When Carson found the victim, Melvin Jacques ("victim"), he was lying on the side of the street in a large puddle of blood. The victim had been shot, and there were no signs of life.

Two individuals witnessed the shooting: Altron Jacques ("Jacques"), the victim's fourteen-year-old nephew, and Paul Jenkins ("Jenkins"). Jacques testified he saw Irick, armed with a shotgun, park his white Cadillac on the side of the road beside the victim. Jacques testified he could see the victim standing next to the car having a conversation with Irick. The victim's voice was low, so Jacques could not hear what was said. However, Jacques stated Irick's voice was loud, and he could hear Irick tell the victim, "Boy, I'll kill you." Jacques then started to run, got about six houses up the street, heard a gunshot, and turned to see the victim fall to the ground. According to Jacques, Irick then pulled into a driveway and drove away towards his house.

Jenkins witnessed the shooting from the roof of his home. Jenkins testified he saw the victim walking down the street between five and six p.m. on June 8, 1995. Jenkins spoke briefly with the victim from his roof. He then saw Irick drive up behind the victim and begin a conversation. The conversation between Irick and the victim lasted between five and ten minutes. Jenkins could not hear most of the conversation, but he testified he did hear Irick tell the victim that he would kill him. Jenkins then heard a gun shot and saw Irick immediately turn his car around. After seeing the victim on the ground, Jenkins called 9-1-1.

Officer Leroy Ravenel ("Ravenel") of the Orangeburg County Sheriff's Department talked to the witnesses, and then proceeded to Irick's residence. Irick answered the door, was

read his Miranda rights, and placed under arrest. Ravenel testified Irick verbally stated he understood his rights. After Irick stated he wished to talk to the police, he said, "I didn't shoot anybody." However, after a few questions Irick said, "I'll show you where the gun is at." Irick took Ravenel to the pond where he claimed he threw the gun, but the gun was never recovered.

Irick was indicted at the October 1995 term of the Orangeburg County grand jury for the offense of murder. Prior to trial, in an *in camera* hearing, defense expert Dr. Valerie Holmstrom ("Dr.Holmstrom") testified Irick has been diagnosed since 1946 with chronic schizophrenia and post-traumatic stress disorder related to Irick's service in the military. In Irick's Final Brief of Appellant, his attorney lists episodes of mental illness, including paranoia, chronic nervousness, and anxiousness. After a trial, the jury found Irick guilty of murder, but mentally ill. This appeal followed.

The following issue is before this Court on appeal:

Did the trial court err by refusing to allow Irick's expert, Dr. Holmstrom, to testify about the effect the victim's use of cocaine and alcohol may have had upon Irick's chronic paranoid schizophrenia when Irick confronted the victim prior to the murder?

## LAW/ANALYSIS

Irick argues the trial court erred by refusing to allow Dr. Holmstrom, who evaluated Irick and studied the VA records of his mental illness dating back to 1947, to testify how a victim intoxicated on crack cocaine and alcohol likely exacerbated Irick's chronic paranoid schizophrenia. We disagree. The trial judge properly refused to allow Dr. Holmstrom to testify as to how Irick would have reacted when he confronted the unarmed victim, who had cocaine and alcohol in his bloodstream, because Dr. Holmstrom's testimony amounted to speculative propensity evidence where there was no evidence of what the victim allegedly said or did to provoke Irick.

A trial judge is accorded broad discretion in ruling on the admissibility of testimony. *State v. Quattlebaum*, 338 S.C. 441, 527 S.E.2d 105 (2000). The admission of expert

testimony is within the discretion of the trial court. *State v. Von Dohlen,* 322 S.C. 234, 471 S.E.2d 689 (1996). The trial judge's determination of admissibility will not be disturbed absent abuse of discretion resulting in prejudice to the complaining party. *State v. Hughey,* 339 S.C. 439, 529 S.E.2d 721 (2000). An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support. *Lee v. Suess,* 318 S.C. 283, 457 S.E.2d 344 (1995).

Dr. Holmstrom, Irick's expert witness, is a clinical psychologist with expertise in forensic psychology. Irick made an *in camera* proffer of Dr. Holmstrom's expert opinion as to what effect, if any, the use of alcohol and crack cocaine by a victim would have upon Irick's chronic schizophrenia. Dr. Holmstrom testified *in camera* that the victim's blood alcohol level was 233.3 milligrams per deciliter and crack cocaine was present in his bloodstream. She testified that the victim's level of intoxication could have adversely affected Irick's perception at the time of the crime. She explained:

If Mr. Irick was confronted with someone who was—since that level of alcohol intoxication would indicate that someone is well beyond being legally drunk, and also under the influence of crack cocaine, one would expect that their behavior could have been quite different than the normal person who is not under the influence of alcohol and drugs. For that—and since under the influence of alcohol and crack cocaine people often can behave in a hostile or provocative way or in a subtle threatening way, that kind of behavior could have impacted on Mr. Irick, given that he has difficulty with dealing with perceived threats from others.

The trial judge refused to allow the proffered testimony to be presented to the jury. Nevertheless, the trial judge ruled Irick could introduce evidence concerning the victim's blood alcohol level and the amount of crack cocaine present in the victim's system on cross examination of the State's pathologist. Further, Dr. Holmstrom was also able to present some of this information in her testimony before the jury during her cross examination by the State. Dr. Holmstrom testified that Irick's family indicated he was not acting maliciously towards them shortly before the murder. Dr. Holmstrom concluded that during the time of the homicide "[Irick] was ... in some situation that provoked his psychiatric symptomatology."

Dr. Holmstrom's opinion on this matter is highly speculative because it is based on no factual predicate in the record. Defense counsel presented no testimony or evidence concerning any behavior or statements by the victim that may have provoked Irick. The two eyewitnesses to the shooting, Jacques and Jenkins, did not overhear the conversation between Irick and the victim, other than Irick's threat to kill the victim. No evidence was presented that indicated the victim made any threatening movements or gestures towards Irick. Even Dr. Holmstrom admits that information concerning the victim's actions and speech would have been useful in determining whether Irick was provoked. According to Dr. Holmstrom on direct examination:

> [I]t is very hard, with no, no concrete memory, or not having heard the verbal interaction which apparently went on for, it sounded like for possibly several minutes, if we had that information we might know a great deal more about perception and about whether the victim was in any way provocative to Mr. Irick or was saying things that Mr. Irick was perceiving directly as threatening in any way. It's just, we are without that information, but that information could have provided a lot of help in that area.

Without any eyewitness testimony concerning any actions by the victim that may have impacted upon Irick's perception, and thereby triggering his mental illness, the proffered testimony of Dr. Holmstrom concerning how the victim's interaction with Irick may have caused Irick to react in a psychotic manner is merely conjectural and speculative.

 An expert's opinion is admissible if it is relevant and based on some factual predicate in the record. Dr. Holmstrom's opinion would be admissible if there were evidence in the record the victim threatened Irick in any manner. However, in this case, where the only evidence presented was the fact the victim was intoxicated, the trial judge did not abuse his discretion by finding the evidence inadmissible. The evidence's limited probative value is substantially outweighed by the prejudicial effect the evidence could have on the jury. Rule 403, SCRE. Furthermore, a reversal in this case would create precedent contrary to public policy because a mentally ill defendant would have an argument he was provoked to

commit murder simply by showing the victim had drugs or alcohol in his system.

CONCLUSION

Based on the foregoing, we **AFFIRM.**

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.