613 S.E.2d 381

**The STATE, Respondent,**

v.

**Phillip W. PRESLAR, Appellant.**

**No. 3987.**

Court of Appeals of South Carolina.

Heard April 4, 2005.

Decided May 2, 2005.

Assistant Appellate Defender Robert M. Pachak, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General David Spencer, all of Columbia; and Solicitor Thomas E. Pope, of York, for Respondent.

ANDERSON, J.:

Phillip Wayne Preslar appeals from his convictions and sentences for two counts of intimidation of a witness. He contends the trial court erred in allowing reference to the prior charges of criminal sexual conduct, the pending charge to which the victim of the intimidation was the victim and chief witness. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

Preslar was charged with twelve counts of criminal sexual conduct (CSC) against his daughter, Melissa. While awaiting trial on the CSC charges, Preslar mailed two handwritten letters seeking to convince Melissa to drop the charges. The first letter was sent to "Melissa, Chris & new baby girl." The letter stated:

[H]ow's your daughter? or my granddaughter if I may ask? I don't know her name or how much she weighed when born. Could you write me and let me know? [M]aybe send some pictures of you all!! I would be very greatful [sic].... I know that you'll take really good care of her. Please do your best, and let her know that I love her, please do this for me Melissa.....

... I just talked with my lawyer and did not get very good news from him. Seems they want me to plead guilty to Criminal Sexual Conduct 2nd degree. It carries 15 years. Missy, that's a long time, and I probably won't make it out alive. Even if I do, I won't be able to survive, because I won't be able to work with a criminal record like the one I'll have. Maybe I should just ask for the Death Penalty because it's more or less what it will be. God, I don't know what to do now. What should I do now?

I have to ask you this because you are the only one who can be happy with the results and outcome of this whole situation. I guess it comes down to what you want the Justice System to do to me, for *you.* I really want you to know that my life is in your hands at this time, and only you can do what's necessary to change what happens to me. I keep hearing that you are going to drop the charges, but I just don't know. Melissa, if you have any part of my heart, please think about dropping the charges. I am not begging you to, just asking *please.* I just don't think I can make it in Prison again, especially 15 years. Missy, my lawyer says that I can take this to Trial, but I don't want to drag out all the shit that they will put any of us thru, if you know what I mean. They will drag out everyone's past by doing a trial and more indictments or warrants could and will come up on others involved.

I will try to keep from going to trial because I don't want them to antagonize you any more than they already have. Melissa, it is very important that you do whatever you do at your own free will, and I want you to know that in no way am I threatening you or anyone else. I just hope and pray that this time you'll save my life from this crooked Justice System.... Once again Melissa, [p]lease do what you can to drop these charges so *we* don't have to *suffer* any more *heartache* that the past is going to bring up.... I pray that you will help me Missy. (Emphasis in original).

In a second letter, addressed to Melissa's sister, Preslar wrote:

Mandy, tell your sister Missy, not to take this as a threat, or personal, or as an effort to get her to drop these charges, Mandy, by no means am I a snitch, but I will not stand by and give my life to SC's prison system for accusations given to NC, almost 7 years ago. Not when God, myself, and other people know about Chris and Missy's past which they explained to me and my friend just 14 months ago, (68 chev, late 1994?). I don't by no means want to see Melissa hurt by her past with Chris but God won't let me stand by and not bring this in to the open. You know, maybe its God's will that put me here to show this anyway since I never done anything about it back then when I should have and they were sleeping together in Indian Land. I am going to

hold off talking with any detectives about this until after Jan. 10th, when Court starts back up here. Everything depends on whether this goes to trial or not. I truly believe that God is using me to bring other people out of their misery of their own hidden sins in which only God and themselves know of!! (God works in mysterious ways). Only God & Melissa have the power to change the outcome of this unforeseen travsety [sic] of all our lives. I Hope and Pray that God will touch Missy's heart just as he has mine.

Preslar was indicted for two counts of intimidation of a witness under section 16–9–340 of the South Carolina Code (2003). Prior to trial, Preslar moved to prohibit the State from presenting any evidence or mentioning the underlying CSC charges. Preslar's counsel alleged the mention of the CSC charges would be unduly prejudicial and would confuse the jury. The State maintained the underlying charges had to be identified in order to demonstrate why the two letters were so threatening to Melissa.

The court allowed the State to articulate that Preslar was charged with criminal sexual conduct without mentioning the number of charges or that he was currently incarcerated. Portions of the letters were redacted so only those sections specifically alleged to be intimidating were allowed into evidence.

During the trial, it was explained that Preslar was charged with CSC. The State informed the jury that Melissa was the alleged victim in the case and the primary witness if it should proceed to trial. Melissa professed that bringing the charges against her father scared her, "but on the other hand [made her] happy" because "he couldn't mess with [her] no more."

Melissa described in detail why the first letter was intimidating to her. As the alleged victim of Preslar's CSC charges, the references to her daughter made her very uneasy. Melissa stated she "didn't want him to know her or her to know him." She later addressed the threat: "Just my daughter period, don't want him to know her or have anything to do with her or see her or touch her or anything."

The references to "more indictments or warrants" made Melissa afraid for her husband. She announced to the jury that she and her husband had sexual relations when she was

still a minor, at sixteen. Melissa testified she was "scared" Preslar would seek charges against her husband, Chris, even though the two married in 1997.

As to the second letter, Melissa's main concern was for her husband. The threats that Preslar would expose their relationship when she was only sixteen made her afraid her husband could go to jail. She articulated the claims by Preslar made her "[h]esitant on going forth." The jury found Preslar guilty on both counts of intimidating a witness.

### STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson*, 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Wood*, 362 S.C. 520, 608 S.E.2d 435 (Ct.App. 2004). This court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum*, 338 S.C. 441, 527 S.E.2d 105 (2000); *State v. Landis*, 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004); *see also State v. Abdullah*, 357 S.C. 344, 349, 592 S.E.2d 344, 347 (Ct.App.2004)("On appeal from a suppression hearing, this court is bound by the circuit court's factual findings if any evidence supports the findings."). This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829; *State v. Davis*, 364 S.C. 364, 613 S.E.2d 760, 2005 WL 708598 (Ct.App.2005).

On review, we are limited to determining whether the trial judge abused his discretion. *State v. Reed*, 332 S.C. 35, 503 S.E.2d 747 (1998); *State v. Bowie*, 360 S.C. 210, 600 S.E.2d 112 (Ct.App.2004). This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829; *State v. Mattison*, 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003).

The admission or exclusion of evidence is left to the sound discretion of the trial judge. *State v. Gaster*, 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Staten*, 364 S.C. 7, 610 S.E.2d 823 (Ct.App.2005). A court's ruling on the admissibili-

ty of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error, which results in prejudice to the defendant. *State v. McLeod*, 362 S.C. 73, 606 S.E.2d 215 (Ct.App.2004). An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. McDonald*, 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. Adams*, 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). In order for an error to warrant reversal, the error must result in prejudice to the appellant. *See State v. Beck*, 342 S.C. 129, 536 S.E.2d 679 (2000); *see also State v. Wyatt*, 317 S.C. 370, 453 S.E.2d 890 (1995) (error without prejudice does not warrant reversal).

### *LAW/ANALYSIS*

Preslar contends the trial court erred in allowing testimony regarding the nature of his charges. He maintains it was unduly prejudicial for the jury to be told the underlying charges were for CSC, and the testimony should have been excluded as improper character evidence or as a reference to a prior bad act. We disagree.

### *I. INTIMIDATION OF A WITNESS*

In South Carolina, intimidation of a witness is a statutory offense consisting of the following elements:

(1) an unlawful threat or force;

(2) to intimidate or impede a witness in the discharge of his duty;

### OR

to destroy, impede, or attempt to obstruct or impede the administration of justice in any court.

S.C.Code Ann. § 16–9–340(A) (2003).

### *II. RES GESTAE*

The res gestae theory recognizes that evidence of other bad acts may be an integral part of the crime with which the defendant is charged or may be needed to aid the fact finder in understanding the context in which the crime occurred. *State v. Fletcher*, 363 S.C. 221, 609 S.E.2d 572 (Ct.App.2005); *State v. Wood*, 362 S.C. 520, 608 S.E.2d 435

(Ct.App.2004). Our supreme court discussed the res gestae theory in *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996):

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the '*res gestae*'" or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ...' [and is thus] part of the *res gestae* of the crime charged."

*Id.* at 122, 470 S.E.2d at 370–71 (quoting *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980)). When evidence is admissible to provide this "full presentation" of the offense, there is "no reason to fragmentize the event under inquiry by suppressing parts of the res gestae." *State v. Sweat*, 362 S.C. 117, 133, 606 S.E.2d 508, 517 (Ct.App.2004) (internal quotations omitted). Under the res gestae principle, it is important that the temporal proximity of the prior bad act be closely related to the charged crime. *Fletcher*, 363 S.C. at 247, 609 S.E.2d at 585. Even if the evidence is relevant under this theory, prior to admission the trial judge should determine whether its probative value clearly outweighs any unfair prejudice. Rule 403, SCRE; *Fletcher*, 363 S.C. at 247, 609 S.E.2d at 585.

Section 16–9–340 of the South Carolina Code provides:

(A) It is unlawful for a person by threat or force to:

(1) intimidate or impede a judge, magistrate, juror, witness, or potential juror or witness, arbiter, commissioner, or member of any commission of this State or any other official of any court, in the discharge of his duty as such; or

(2) destroy, impede, or attempt to obstruct or impede the administration of justice in any court.

S.C.Code Ann. § 16–9–340 (2003).

In the case *sub judice*, the evidence was properly admitted under the res gestae theory. The underlying CSC charges

were a necessary and integral part of the crime for which Preslar was charged. The nature of those crimes—the explanation that Preslar allegedly victimized his daughter Melissa—was inextricably interwoven in the fabric of the charge of intimidation of Melissa as the victim and primary witness in the case against Preslar.

In order for the jury to fully understand why Melissa would be threatened by Preslar's references to her baby girl, the jury had to understand what Melissa accused Preslar of doing to her. Without reference to the underlying CSC charges, the jury would not be able to discern the context in which the questions became threats. The reference to the CSC charges was necessary for a full presentation of the evidence to the jury. The explanation that Preslar was charged with CSC and Melissa was his victim is archetypical res gestae evidence. Moreover, the probative value of the evidence outweighed its prejudicial effect. *See State v. Wood,* 362 S.C. 520, 608 S.E.2d 435 (Ct.App.2004). Concomitantly, the trial court did not abuse its discretion in admitting the evidence that Preslar was charged with CSC and Melissa was the victim and primary witness in the case.

### III. RELEVANCE

For evidence to be admissible, it must be relevant. Rules 401 & 402, SCRE; *State v. Sweat,* 362 S.C. 117, 606 S.E.2d 508 (Ct.App.2004). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina." Rule 402, SCRE; *State v. Gillian,* 360 S.C. 433, 457–58, 602 S.E.2d 62, 75 (Ct.App.2004) (internal quotations omitted).

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE; *State v. Pagan,* 357 S.C. 132, 142, 591 S.E.2d 646, 651 (Ct.App.2004). Under Rule 401, evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy. *In re Care and*

*Treatment of Corley,* 353 S.C. 202, 577 S.E.2d 451 (2003); *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403, SCRE.

The evidence of Preslar's charges for CSC was absolutely necessary and relevant for the jury to determine why the letters written to Melissa were threatening and intimidating. While the nature of the charges was prejudicial, as is any evidence against the defendant in a criminal trial, the evidence was essential to proving the elements of the crime for which Preslar is charged. The probative value of the evidence outweighed its prejudicial effect. Apodictically, the trial court properly allowed the testimony regarding Preslar's charges for CSC.

## *CONCLUSION*

The testimony explaining Preslar's prior charges for CSC to the jury was necessary to explain the context or the res gestae of the crime of intimidating a witness under section 16–9–340. Additionally, the evidence was not unduly prejudicial so as to outweigh its probative value. The trial court did not abuse its discretion. Accordingly, Preslar's convictions and sentences are

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.