705 S.E.2d 441

**The STATE, Respondent,**

v.

**Shirley Mae GEER, Appellant.**

No. 4760.

Court of Appeals of South Carolina.

Heard May 19, 2010.

Decided Nov. 24, 2010.

Rehearing Denied Feb. 25, 2011.

---

3. We note that a motion to substitute may be immediately appealable if it falls under section 14–3–330(1) or (2).

180

182

Appellate Defender M. Celia Robinson, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General A. West Lee, all of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

GEATHERS, J.

Shirley Mae Geer appeals her conviction for possession of crack cocaine. Geer asserts the trial court erred by (1) failing to dismiss the charges against her or to grant a continuance in order to give her time to request and review exculpatory evidence withheld by the State that was favorable to her defense; (2) denying her motion to quash the indictment on the ground of selective prosecution; (3) denying her motion to suppress drug evidence seized as the result of an unreasonable, warrantless, beneath-the-skin search that was unsupported by probable cause; and (4) denying her motion to suppress the drug evidence because the State failed to present a sufficient chain of custody. We affirm.

## FACTS/PROCEDURAL BACKGROUND

At approximately 11:30 p.m. on the night of September 9, 2007, Officer Byrd and Officer Crisp responded to a dispatch call directing them to Butler Street (a dead-end street) in Greenwood County. Upon arriving at the location, they found Michael Leon Parks standing outside of his vehicle and Geer seated in the vehicle on the front, passenger seat. Officer Byrd began to question Parks about his reason for being at the location, and he determined that Parks was being dishonest. Officer Byrd continued to question Parks. After Officer Byrd told Parks that it would be in his best interest to be honest, Parks admitted that he had given Geer two rocks of crack cocaine in exchange for her performance of oral sex and that Geer had put the rocks in her mouth. Relying on Parks'

assertion, Officer Byrd approached Geer and asked her to open her mouth. When Geer complied, Officer Byrd discovered two off-white, rock-like substances underneath her tongue. Officer Byrd then asked Geer to spit the rocks onto the hood of his patrol car, and she complied. He then scooped the rocks into a manila envelope and secured the envelope in the patrol car.

Before making any arrests, the officers telephoned their supervisor. Thereafter, they decided not to arrest Parks because the situation would embarrass his girlfriend and family and would cause him embarrassment at work. Instead, they gave him a courtesy summons for solicitation of prostitution. The officers also discussed how Parks was going to get home. They could not allow him to drive because he did not have a valid driver's license. This conversation was recorded on an audiotape from the patrol car and later stored at the Greenwood County Police Department. Geer, however, was arrested, taken into custody, and charged with prostitution and possession of crack cocaine. Even though Parks admitted to distributing the crack cocaine to Geer, he was not charged with distribution of crack cocaine, and the charge against him for solicitation of prostitution was dismissed at the request of Officer Byrd. The charge against Geer for prostitution was also dismissed, and she proceeded to trial on the charge of possession of crack cocaine.

After Geer was arrested, Officer Byrd took the manila envelope containing the crack cocaine rocks to the Greenwood City Hall, where a field test was performed on them. After the substance was tested and weighed, it was placed in a "best bag" [1] with an assigned control number, documented, and put into the evidence locker. The evidence was then taken from the locker by Officer Ed Suddeth and transferred to the control evidence room. A few days later, Officer Suddeth took the evidence to the South Carolina Law Enforcement Division (SLED) to be analyzed. From the time Officer Suddeth removed the evidence from the evidence locker until he turned

---

1. A best bag is a sealable envelope in which evidence is placed. In order to ensure that it is not tampered with, after the bag is sealed, a blue line sticker is placed on it. If it is ever tampered with, the line would break and it would be easy to detect that the contents had been compromised.

it over to the SLED log-in area to be placed in a vault, the seal on the best bag was intact and the chain of custody logs were signed.

SLED Officer Larry Zivkovitch, a drug analyst, retrieved the best bag from the log-in area on October 31, 2007, and on November 28, 2007, he performed an analysis on its contents.[2] The initial spot test indicated that there was a possibility that the substance was cocaine. Officer Zivkovitch then ran a second, instrument-based test used by scientists (an FTIR test)[3] on the substance, and it was positively identified as cocaine base, commonly known as crack. After Officer Zivkovitch analyzed and weighed the substance, he placed it in a heat-sealed bag with his initials underneath the heat seal and returned it to the evidence log-in area to await its transfer by the Greenwood Police Department.

Geer's trial was held on February 28, 2008, in Greenwood County. The trial lasted one day, and the jury returned a verdict of guilty on the charge of possession of crack cocaine. As a result of her conviction, Geer was sentenced to two years' incarceration, suspended upon two years' probation with substance abuse counseling and random drug and alcohol testing, and a $500 fee was imposed upon her for the use of the public defender. This appeal followed.

---

2. The record indicates that the evidence was in the custody of Officer Zivkovitch from October 31, 2007, until he took it "back down to the vault, down in the log-in area for the officers to pick back up." Officer Zivkovitch did not perform the test until November 28, 2007. The record *does not indicate exactly where within Officer Zivkovitch's* custody the evidence was actually secured, and Geer made no objection concerning this issue.

3. A Fourier Transform Infrared Spectroscopy (FTIR) or Full Spectrum Scan is an instrument that "shines infrared light through a sample" substance.

> [T]he light that is absorbed or transmitted is measured by the instrument. An IR spectrum, or printout, is created that shows the light absorbed at different wavelengths. An IR spectrum is much like a fingerprint in that it is unique to a substance and can therefore be used to make a positive identification.

State of Alaska Department of Public Safety, Scientific Crime Detection Laboratory, *Controlled Substances*, http://www.dps.alaska.gov/Crimelab/services/controlledsubstances.aspx (last visited Aug. 3, 2010).

## ISSUES ON APPEAL

The issues on appeal are: (1) whether the trial court erred in denying Geer's motion for a continuance; (2) whether the trial court erred in denying Geer's motion to quash the indictment, asserting selective prosecution by the State; (3) whether the trial court erred in denying Geer's motion to suppress the drug evidence, asserting that it was obtained through an unconstitutional, warrantless search; and (4) whether the trial court erred in denying Geer's motion to suppress the drug evidence because the State failed to present a sufficient chain of custody.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court "is bound by the trial court's factual findings unless they are clearly erroneous." *Id.* "This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *State v. Wilson,* 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001). "This Court does not reevaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence." *Id.*

## LAW/ANALYSIS

### I. Motion for Continuance

Geer argues the trial court erred when it denied her motion for a continuance because evidence was withheld by the State until the day before trial. We disagree.

"The granting of a motion for a continuance is within the sound discretion of the trial court and will not be disturbed absent a clear showing of an abuse of discretion." *State v. Yarborough,* 363 S.C. 260, 266, 609 S.E.2d 592, 595 (Ct.App. 2005). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *State v. Irick,* 344 S.C. 460, 464, 545 S.E.2d 282, 284 (2001); *see also State v. Funderburk,* 367 S.C. 236, 239, 625 S.E.2d 248, 249–50 (Ct.App.2006) ("An abuse of discretion occurs

when the trial court's ruling is based on an error of law."). Even if there was no evidentiary support, "[i]n order for an error to warrant reversal, the error must result in prejudice to the appellant." *State v. Preslar*, 364 S.C. 466, 473, 613 S.E.2d 381, 385 (Ct.App.2005); *see also State v. Wyatt*, 317 S.C. 370, 372–73, 453 S.E.2d 890, 891 (1995) (stating that error without prejudice does not warrant reversal). "[R]eversals of refusal of continuance are about as rare as the proverbial hens' teeth." *State v. Lytchfield*, 230 S.C. 405, 409, 95 S.E.2d 857, 859 (1957).

In addressing the merits of Geer's motion for a continuance, we first analyze her contention that the State withheld evidence that was favorable to her defense until the eve of trial in violation of Rule 5, SCRCrimP. Rule 5(a)(1)(C), SCRCrimP, states in part:

Upon request of the defendant the prosecution shall permit the defendant to inspect and copy books, papers, documents, photographs, tangible objects ... which are within the possession, custody or control of the prosecution, and which are material to the preparation of his defense or are intended for use by the prosecution as evidence in chief at the trial....

In the present case, the evidence presented to Geer by the State the evening before the trial was an audiotape of the arrest. According to Rule 5, SCRCrimP, if the evidence was considered "material to the preparation of [her] defense ... and intended for use by the prosecution as evidence in chief at the trial," Geer had a right to possession and review of the audiotape. Geer argued "under the solicitor's program, the State was required to provide all discovery at the initial appearance or provide a list of things that were outstanding," but the record does not indicate that Geer requested that the State provide any evidence as required under Rule 5.

Geer was arrested and charged with possession of crack cocaine on September 9, 2007, but her trial was not held until February 28, 2008. She had ample time to request and receive discovery information before the eve of trial. Geer did not request any information regarding the night of her arrest but relied upon the State's production of the audiotape on the eve of trial. Geer has not shown that the discovery of

information contained on the audiotape was a denial of evidence that was material to the preparation of her defense, thereby rising to the level of a Rule 5 violation. Further, the audiotape provided evidence that served to inculpate rather than exculpate her. That is, the evidence provided proof that Geer was in fact in possession of crack cocaine on the night of her arrest. Furthermore, the record does not indicate the State intended to use the audiotape "as evidence in chief at the trial." In fact, a thorough review of the record reveals that the State never introduced the audiotape or a transcript of its contents into evidence. The facts show that there was no violation of Rule 5, and the trial court did not err in denying Geer's motion for a continuance.

■ In conjunction with her assertion of a violation of Rule 5, SCRCrimP, Geer also maintains that the State's withholding of evidence was in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). The State argues that Geer did not raise the issue of a *Brady* violation in support of her motion to dismiss at the trial, and thus, it is not preserved for our review.

■ The State is correct in its argument that Geer did not explicitly state its late delivery of the evidence constituted a *Brady* violation; however, Geer presented arguments "sufficiently specific to bring into focus the precise nature of the alleged error so that it [could] be reasonably understood by the trial judge." *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 344, 479 S.E.2d 67, 75 (Ct.App.1996). "A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003); *see also State v. Russell*, 345 S.C. 128, 132, 546 S.E.2d 202, 204 (Ct.App.2001) (explaining that even though exact words are not used to argue an issue, if it is clear from the argument presented in the record that the motion was made on a particular ground, the argument will be

considered raised to the trial court and will be preserved for review).

Nevertheless, Geer has not established that a *Brady* violation occurred. There are three categories of *Brady* violations: "(1) cases that include [non-disclosed] evidence of perjured testimony about which the prosecutor knew or should have known, (2) cases in which the defendant specifically requested the [non-disclosed] evidence, and (3) cases in which the defendant made no request or only a general request for *Brady* material." *Gibson v. State*, 334 S.C. 515, 524–25, 514 S.E.2d 320, 325 (1999).

"*Brady* only requires disclosure of evidence which is both favorable to the accused *and* material to guilt or punishment." *State v. Taylor*, 333 S.C. 159, 177, 508 S.E.2d 870, 879 (1998) (citing *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). "A *Brady* claim is based on the requirement of due process." *Gibson*, 334 S.C. at 524, 514 S.E.2d at 324. To establish a due process violation, an accused must demonstrate "(1) the evidence was favorable to the accused, (2) it was in the possession of or known to the prosecution, (3) it was suppressed by the prosecution, and (4) it was material to guilt or punishment." *Id.*

Moreover, the State's late disclosure of the evidence did not impair Geer's ability to present a defense regarding whether she possessed crack cocaine. A *Brady* violation would have occurred only had the evidence been favorable to the defense, the State possessed and withheld it, and it was material to Geer's guilt or punishment. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375. Also, "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir.1985). Geer has not established a *Brady* violation occurred such that there is a reasonable probability the result of her trial would have been different had she received the evidence earlier. The audiotape was not played during trial nor did Geer attempt to use its contents to establish a defense to the charge of possession

of crack cocaine. As such, the trial court did not err in denying Geer's motion for a continuance based on a Rule 5, SCRCrimP, or a *Brady* violation. Thus, the decision of the trial court to deny her motion for a continuance is affirmed.

## II. Motion to Quash Based on Selective Prosecution

■ Geer argues the trial court erred when it denied her motion to quash the indictment based on selective prosecution. The State argues that Geer's motion to quash based on selective prosecution was in reference to the charge of prostitution, not on the drug possession charge, and is therefore not preserved for this Court's review. We conclude that the issue was preserved, but that the trial court did not err by denying Geer's motion to quash.

■ "It is well settled that an issue may not be raised for the first time in a post-trial motion." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007). "Further, it is a litigant's duty to bring to the court's attention any perceived error, and the failure to do so amounts to a waiver of the alleged error." *Id.* "It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998); *see also* Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 57 (2d ed.2002) (stating that to be preserved for appellate review, an issue must have been "(1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity.").

In this case, Geer argued selective prosecution because she was arrested for prostitution while Parks was not. Geer further argued that the decision not to prosecute Parks for distributing drugs was part of the overall scheme to protect his reputation as the prosecution of the drug charge would likely reveal his involvement in prostitution. The court, Geer, and the State discussed at length the State's decision to prosecute Geer for drug possession while declining to charge Parks with drug distribution. Ultimately, the court denied Geer's motion to quash the indictment against her. Accord-

ingly, because the issue of selective prosecution on the drug charge was sufficiently raised and ruled upon, we hold that it has been preserved for this Court's review.

■ Nevertheless, while we find the State's exercise of its prosecutorial discretion troublesome, we conclude that Geer's argument fails on the merits. There are two prongs that a defendant must satisfy to establish selective prosecution. First, "a defendant must first demonstrate that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted." *United States v. Catlett*, 584 F.2d 864, 866 (8th Cir.1978). "Second, the defendant must demonstrate that the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or his exercise of his [F]irst [A]mendment right to free speech." *Id.*

■ "Courts look suspiciously on selective prosecution claims because they 'ask[ ] the court to exercise judicial power over a "special province" of the Executive [branch].' " *State v. 192 Coin–Operated Video Game Machines*, 338 S.C. 176, 200, 525 S.E.2d 872, 885 (2000) (quoting *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)) (first alteration by court). Because of this balance of powers concern, a " 'presumption of regularity supports' . . . prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.' " *Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480 (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)).

■ In order to prevail on a claim for selective prosecution, Geer would have to show not just that she "had been singled out for prosecution, but that the decision to prosecute was based on unconstitutional considerations." *United States v. Marcum*, 16 F.3d 599, 602 (4th Cir.1994). "A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 517 U.S. at 464–65, 116 S.Ct. 1480

(quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)) (omission by court).

 "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380, n. 11, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Here, Geer has not established that she was singled out for prosecution on unconstitutional grounds. She has not alleged nor does the record contain anything to show that the State chose to prosecute her based solely on impermissible grounds such as her gender or race. As a result, she has not proven that the State's decision to prosecute her constitutes selective prosecution warranting reversal of the trial court's denial of her motion to quash.

### III. Warrantless, Beneath–the–Skin Search and Probable Cause

 Geer argues the trial court erred when it denied her motion to suppress drug evidence on the ground that it was obtained through an unconstitutional, warrantless, beneath-the-skin search because the search was unsupported by probable cause. We disagree.

 "When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm the trial judge's ruling if there is *any* evidence to support the ruling." *State v. Missouri*, 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004). The trial court's factual findings on whether evidence should be suppressed due to a Fourth Amendment violation are reviewed for clear error. *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666–67 (2000) (stating that a private search is a question of fact and the trial court's ruling will be reversed only if there is clear error).

The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Similarly, the South Carolina Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, the person or thing to be seized, and the information to be obtained.

S.C. Const. Art. I, § 10.

With respect to searches involving intrusions beyond the body's surface, the United States Supreme Court has held:

The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Schmerber v. California,* 384 U.S. 757, 769–70, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

 The acquisition of beneath-the-skin evidence requires certain considerations, namely, the existence of "probable cause to believe the suspect has committed the crime," "a clear indication that relevant material evidence will be found," and "the method used to secure [the evidence] is safe and reliable." *State v. Baccus,* 367 S.C. 41, 53–54, 625 S.E.2d 216, 222–23 (2006). Probable cause merely requires that,

[T]he facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be.... useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true

than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

*Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). "Probable cause may be found somewhere between suspicion and sufficient evidence to convict." *State v. Blassingame,* 338 S.C. 240, 250, 525 S.E.2d 535, 540 (Ct.App.1999).

In the case at hand, the police responded to a call at approximately 11:30 p.m. on a dead end street and found Geer and Parks with Parks' vehicle. When Officer Byrd questioned Parks as to why they were there, Parks began to act suspiciously and lied about the circumstances surrounding his presence at the scene. This caused Officer Byrd to believe that Parks and Geer may have been involved in criminal activity. Upon further questioning and against his interests, Parks admitted that he and Geer had been engaged in an act of prostitution and that he had paid Geer for the act with illegal drugs. Parks informed the officers that Geer had placed the drugs in her mouth, underneath her tongue. This information gave Officer Byrd a clear indication that if he searched Geer, "relevant material evidence" would be found.

Even though he initially lied about what they were doing at the scene, Parks' eventual truthful admission gave Officer Byrd the probable cause necessary to conduct a search of Geer's mouth, and the search was not based upon a "mere chance that [the] desired evidence might be obtained." *Schmerber,* 384 U.S. at 770, 86 S.Ct. 1826. The facts available to Officer Byrd led him to believe that a criminal offense had occurred and that Parks and Geer were involved. Considering the totality of the circumstances (the lateness of the hour, the dead-end street, Parks' initial suspicious behavior and his eventual admission against his interest) Officer Byrd had a clear indication that not only had a criminal act taken place but also that evidence would be found. The record indicates that Officer Byrd did not reach into Geer's mouth but asked her to spit the rocks onto the hood of the patrol car and she complied, thus, ensuring the evidence was found and retrieved in a safe and reliable manner.

Furthermore, our Supreme Court has held, "[a] suspect has no constitutional right to destroy or dispose of evidence by swallowing, consequently he cannot consider .the mouth a 'sacred orifice' in which contraband may be irretrievably concealed from the police." *State v. Dupree,* 319 S.C. 454, 458, 462 S.E.2d 279, 282 (1995) (quoting *State v. Williams,* 16 Wash.App. 868, 560 P.2d 1160, 1162 (1977)). Given the nature of the evidence and the manner in which Geer sought to conceal it, it was necessary for Officer Byrd to immediately seize the evidence in order to ensure that Geer did not destroy it by swallowing it. *Baccus,* 367 S.C. at 53, 625 S.E.2d at 222.

As stated, when an appellate court reviews a Fourth Amendment search and seizure case, it must affirm the trial court's ruling if any evidence supports the ruling. *State v. Missouri,* 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004). In this case, we agree with the trial court, finding sufficient evidence supports the search and seizure. Accordingly, Geer has not shown that the trial court committed clear error when it allowed the evidence to be admitted. Even though Officer Byrd did not secure a warrant for the search of Geer's mouth due to the nature of the evidence and the possibility that it could be easily destroyed, this Court finds that the trial court properly found the search constitutional and supported by probable cause. Consequently, this Court finds no Fourth Amendment violation and the trial court's denial of Geer's motion to suppress the evidence is affirmed.

### IV. Chain of Custody

▀▀▀ Geer argues the trial court erred when it denied her motion to suppress the drug evidence because the State failed to present a sufficient chain of custody. We disagree.

▀▀▀▀ "[A] party offering into evidence fungible items such as drugs or blood samples must establish a complete chain of custody as far as practicable." *State v. Sweet,* 374 S.C. 1, 6, 647 S.E.2d 202, 205 (2007). "In applying this rule, [the South Carolina Supreme Court] has held that where a party has established the identity of each person in the chain of custody, issues regarding the care of the evidence only go to the weight of the specimen as credible evidence, and not its admissibility." *Id.* at 8, 647 S.E.2d at 206. "The admission of

evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Gaster,* 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002).

At trial, the State submitted testimony sufficient to prove the chain of custody from the time Officer Byrd secured the evidence in the patrol vehicle at the scene of the arrest until it was returned to the custody of the Greenwood Police Department. There was also testimony that the blue line seal and the heat seal on the envelope containing the evidence, although opened by each person who tested it, had not been tampered with. At trial, the evidence was also presented, examined, and found to be intact.

Geer argues that because the State admits that there were inconsistencies in the affidavit that was submitted regarding Officer Suddeth's receipt of the evidence from Officer Byrd, the admission of the evidence should be suppressed. The affidavit states that the evidence was received "in person"; however, Officer Suddeth actually retrieved the evidence from the evidence locker. The custody form that is used to log in evidence lists two choices when logging the evidence, "in person" or "via mail." The discrepancy was explained to and accepted by the trial court that as a matter of standard procedure, when filling out a form, if the receiver takes the evidence from the evidence locker, he or she has no other choice but to log it as received "in person." The discrepancy was not a blatant disregard for the truth of how the evidence was transferred. Additionally, Geer argues that there was a discrepancy of one tenth of a gram in the actual weight of the substance when it was logged by Officer Byrd compared to when it was logged by Officer Zivkovitch. That discrepancy was explained to and accepted by the trial court as resulting from the field testing done at City Hall.

 "While proof need not negate all possibility of tampering, it is generally held that the party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed." *Benton v. Pellum,* 232 S.C. 26, 33, 100 S.E.2d 534, 537 (1957) (internal citation omitted). Conversely, if the State had failed to establish an

adequate chain of custody such that the inconsistency or discrepancy in the chain was *critical*, the chain of custody would have been considered fatally deficient and the trial court would have erred in admitting the evidence. *State v. Joseph*, 328 S.C. 352, 364–65, 491 S.E.2d 275, 281–82 (Ct.App. 1997). Here, the State has established a complete chain of custody from the time the evidence was taken from Geer until it was admitted at trial. None of the minor discrepancies rise to the level of reversible error. Consequently, the decision of the trial court to deny Geer's motion to suppress the evidence based on an insufficient chain of custody is affirmed.

## CONCLUSION

Based on the foregoing, the trial court did not err or abuse its discretion when it denied Geer's motion for a continuance, her motion to quash based on selective prosecution, and her motion to suppress the drug evidence. Accordingly, the decision of the trial court is

**AFFIRMED.**

KONDUROS, J., concurs.

LOCKEMY, J., dissents.

LOCKEMY, J.

I agree with the majority that the State's exercise of its prosecutorial discretion is "troublesome" to say the least. However, I respectfully dissent because I believe the search of Geer's mouth violated the Fourth Amendment's prohibition against an unreasonable search. The only fact available to Officer Byrd indicating a search of Geer's mouth would reveal relevant material evidence was Parks's mere assertion that Geer had placed drugs in her mouth, which he made after previously lying to Officer Byrd. I would hold this sole assertion from someone with doubtful veracity is insufficient to establish a clear indication drugs would be found in Geer's orifice to support a search. U.S. Const. amend. IV; S.C. Const. art. I, § 10; *see State v. Dupree*, 319 S.C. 454, 459, 462 S.E.2d 279, 282 (1995) (finding a clear indication drugs would be found in Dupree's mouth existed where officers observed Dupree standing in a laundromat known for drug activity,

holding what the they believed were drugs, placing his hand to his mouth and attempting to leave through the back door). As in *Dupree*, I believe more facts are necessary to establish a clear indication.