603 S.E.2d 594

**The STATE, Respondent,**

v.

**Victor MISSOURI, Petitioner.**

No. 25874.

Supreme Court of South Carolina.

Heard June 8, 2004.

Decided Sept. 27, 2004.

Assistant Appellate Defender Tara S. Taggart, of South Carolina Office of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

Chief Justice TOAL:

This Court granted certiorari to review the court of appeals' decision reversing the trial court, which held that Petitioner Victor Missouri (Missouri) did not have a reasonable expectation of privacy in another's apartment and therefore could not challenge the search of the apartment under the Fourth Amendment. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

In early 1995, Greenville detectives were investigating a crack-cocaine ring. The police obtained a warrant to search the apartment of Curtis and Laura Sibert (Siberts) for cocaine. Missouri was in the apartment at the time, standing near a quantity of crack cocaine. Missouri was arrested and charged with trafficking in crack cocaine.

At trial, lead detective Eric Cureton (Detective Cureton) admitted that he lied in the affidavit issued in support of the search warrant. In addition, Missouri argued that exculpatory information was omitted from the affidavit. Nonetheless, the trial court denied Missouri's motion to suppress the evidence obtained in the search. In an unpublished opinion, the court of appeals reversed, ruling that the omitted information was necessary for the magistrate's finding of probable cause, and remanded the matter for a hearing to determine whether Missouri had a reasonable expectation of privacy in the Siberts' apartment. *State v. Missouri*, Op. No. 97–UP–448 (S.C. Ct.App. filed September 15, 1997). This Court affirmed the court of appeals' ruling, holding that the search warrant was

invalid because it was not supported by probable cause. *State v. Missouri,* 337 S.C. 548, 556–557, 524 S.E.2d 394, 398 (1999).

A hearing was then held to determine, as the court of appeals instructed, whether Missouri had a reasonable expectation of privacy in the Siberts' apartment. Missouri and Curtis Sibert (Curtis) testified that are close friends and have known each other for many years. On occasion, Curtis would give Missouri a key to the Siberts' apartment, allowing Missouri to come and go as he pleased. Even though Missouri lived only a few miles away, he would stay at the Siberts' apartment whenever he wanted to "get away." Missouri testified that the apartment was a place of comfort and solace for him and that he felt a sense of privacy there.

The State presented the testimony of the arresting officer, Detective Cureton. When Detective Cureton conducted surveillance on the Siberts' apartment the day of the arrest, he observed Missouri enter the apartment between 2:30 and 3:00 p.m. Detective Cureton also observed Curtis and his wife Laura purchasing large quantities of baking soda [1] at different locations around town earlier that day. The police searched the Siberts' apartment between 9:30 and 10:00 p.m.

When he entered the apartment, Detective Cureton discovered Missouri in the kitchen standing over several dishes of cooling crack cocaine, while Curtis and Laura sat on the couch watching television. Detective Cureton testified that the police confiscated Missouri's keys and that the key ring held only three keys: two car keys and a key to Missouri's residence. In addition, Detective Cureton recovered a black bag belonging to Missouri that contained scales and packaging paper. Detective Cureton testified that Missouri had no other items in the apartment. But on cross-examination, Detective Cureton admitted that he did not know whether Missouri had a change of clothes in the Siberts' apartment at the time of the search.

Curtis testified that Missouri did not stay over the night before the search took place and could not remember the last time Missouri had spent the night. Curtis testified that at the time of arrest, (1) Missouri had a key to the apartment; (2) he

---

1. Baking soda is used in transforming powdered cocaine into crack cocaine.

would not have allowed Missouri to use the apartment if he had known Missouri intended to mix drugs there; and (3) Missouri was in the apartment for social reasons only.

After considering the testimony presented at the hearing, the trial judge found Missouri had a reasonable expectation of privacy in the Siberts' apartment. The court of appeals reversed, holding that Missouri did not have "standing"[2] because he did not have a reasonable expectation of privacy in the Siberts' apartment. Missouri was merely a permitted guest conducting business, the court ruled, not an overnight guest entitled to Fourth Amendment protection. *State v. Missouri*, 572 S.E.2d 467, 471, 352 S.C. 121, 130 (Ct.App.2002).

This Court granted Missouri's petition for writ of certiorari to review the following question:

Did the court of appeals err in reversing the trial judge's ruling that Missouri had a reasonable expectation of privacy in the Siberts' apartment?

## LAW/ANALYSIS

### Standard of Review

■ When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm the trial judge's ruling if there is *any* evidence to support the ruling. *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000) (emphasis added). The appellate court will reverse only when there is clear error. *Id.*

### Reasonable Expectation of Privacy

Missouri argues that he had a reasonable expectation of privacy in the Siberts' apartment at the time the police searched the apartment. We agree.

---

2. The United States Supreme Court has expressly rejected the application of an analysis based on the standing doctrine; instead, the analysis is based on substantive Fourth Amendment law. *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978). The use of the term "standing" has created confusion in this context, and therefore "standing" is no longer appropriate to "connote the legitimate expectation of privacy in the evidence seized or the premises searched." *United States v. Bouffard*, 917 F.2d 673, 675 (1st Cir.1990).

The Fourth Amendment guarantees individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; S.C. Const. art. I, § 10. To claim protection under the Fourth Amendment of the U.S. Constitution, defendants must show that they have a legitimate expectation of privacy in the place searched. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). A legitimate expectation of privacy is both subjective and objective in nature: the defendant must show (1) he had a subjective expectation of not being discovered, and (2) the expectation is one that society recognizes as reasonable. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984) (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).

At the "very core" of the Fourth Amendment is a person's right "to retreat into his own home and there be free from unreasonable government intrusions." *Kyllo v. United States,* 533 U.S. 27, 31, 121 S.Ct. 2038, 2041, 150 L.Ed.2d 94 (2001) (citation omitted). What is less clear is whether a person has a legitimate expectation of privacy in the home of another. Three cases from the United States Supreme Court (USSC) provide guidance in our consideration of this question.

When first presented with this question, the USSC held that a defendant could challenge a search under the Fourth Amendment simply by being "legitimately on the premises." *Jones v. United States,* 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960), *overruled in part, United States v. Salvucci,* 448 U.S. 83, 89, 100 S.Ct. 2547, 2551, 65 L.Ed.2d 619 (1980) (rejecting the "automatic standing" rule, which conferred standing to any defendant charged with crimes of possession). The standard of simply being "legitimately on the premises" was eventually repudiated as being "too broad a gauge for measurement of Fourth Amendment rights." *Rakas v. Illinois,* 439 U.S. 128, 142, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978). Nonetheless, the *Rakas* Court did "not question the conclusion of *Jones* that the defendant in that case suffered a violation of his personal Fourth Amendment rights." *Id.* at 141, 99 S.Ct. at 429. In affirming the ultimate conclusion of *Jones,* the Court was persuaded by the following facts: (1) Jones and the owner of the apartment were friends; (2)

the owner had given Jones a key to the apartment; (3) Jones had a suit and shirt in the apartment; (4) Jones had slept there at least once before; and (5) Jones was the sole occupant of the apartment at the time it was searched. *Id.* Accordingly, the Court agreed that the defendant was entitled to Fourth Amendment protection. *Id.*

In a subsequent case, the USSC found that an overnight guest had a reasonable expectation of privacy in another's home. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The defendant in *Olson* was suspected of robbing a gas station and fatally wounding the station manager. An investigation led the police to a house where they thought the suspect was hiding. When the police confirmed that the defendant was inside the upper unit of the home, they drew their weapons, entered the duplex without the owner's permission, found the defendant hiding in a closet, and arrested him. The Minnesota Supreme Court held that the defendant had a "sufficient interest" in the home such that he could challenge the legality of the warrantless search and arrest. *Id.* at 94, 110 S.Ct. at 1687.

The USSC affirmed, concluding that the defendant's status as an overnight guest was "alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id.* at 96, 110 S.Ct. at 1688. Although the Court noted that the defendant had been staying at the home, sleeping on the floor for several days before the robbery, and had a change of clothes with him, the Court did not articulate what constitutes an "overnight" guest. *Id.* at 97 n. 6, 110 S.Ct. 1688 n. 6. Instead, the Court supported its holding by speaking generally about the social expectations of privacy recognized by houseguests:

> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside.
>
> . . .
>
> The houseguest is there with the permission of his host, who is willing to share his house and *his privacy* with his guest.

*Id.* at 99, 110 S.Ct. at 1690 (emphasis added). Accordingly, the Court concluded that the defendant's expectation of privacy in the home of another "was rooted in 'understandings that are recognized and permitted by society,'" and therefore the defendant was permitted to challenge the search. *Id.* at 100, 110 S.Ct. at 1690.

Most recently, the USSC held that the defendants did not have a reasonable expectation of privacy in the home of another when the nature of the defendant's visit was purely commercial, the visit was short, and there was no previous connection between the defendants and the lessee. *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). The defendants in *Carter* lived out-of-state and used the lessee's apartment for the sole purpose of packaging cocaine. The defendants had never visited the apartment before and stayed for two-and-a-half hours. In exchange for use of the apartment, the defendants gave the lessee one-eighth ounce of cocaine. The Court concluded that the defendants did not have a legitimate expectation of privacy because they were "essentially present for a business transaction and were only in the home a matter of hours." *Id.* at 90, 119 S.Ct. at 473. In addition, the Court was persuaded by the fact that the defendants had no "previous relationship" with the lessee and nothing "to suggest a degree of acceptance into the household." *Id.* Accordingly, in a 5–4 decision, the Court held that the defendants were not entitled to Fourth Amendment protection.[3]

---

3. Although the majority in *Carter* held that the defendants were not entitled to Fourth Amendment protection, a "different majority" recognized that social guests present for less than an overnight stay may enjoy a reasonable expectation of privacy in their host's home. In a concurring opinion, Justice Breyer explicitly stated that he agreed with the dissent—which concluded that *all* invited guests are entitled to Fourth Amendment protection, whether present for a business purpose or not—but he agreed with the majority's decision because he thought the search itself was lawful. *Id.* at 104, 119 S.Ct. at 480 (Breyer, J., concurring). In another concurrence, Justice Kennedy stated that, in his view, *"almost all social guests* have a legitimate expectation of privacy ... in their host's home." *Id.* at 99, 119 S.Ct. at 478 (Kennedy, J., concurring) (emphasis added). But because the defendants in *Carter* were not "guests," they did not have an expectation of privacy in the owner's home. *Id.* at 102, 119 S.Ct. at 479. Accordingly, it is apparent that at least five members of the Court—the three who dissented and the two who concurred—would be willing to extend protection to

■ In the present case, Missouri and Curtis testified that they had grown up together and were "good friends." Missouri had frequently visited the Siberts' apartment in the past and occasionally spent the night. Missouri described the Sibert home as a place to "get away" and as a place to "find comfort." At times, Missouri had a key to the Siberts' apartment and kept a change of clothes there. He paid nothing to use the apartment and was there for at least seven hours on the day of the search.

By choosing to share the privacy of their home with Missouri on several occasions in the past and on the occasion in question, both the Siberts and Missouri demonstrated a subjective expectation of privacy, and that expectation, we hold, is one that society is prepared to recognize as reasonable. *See Oliver*, 466 U.S. at 177, 104 S.Ct. at 1741 (citing *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring) (a reasonable expectation of privacy is both subjective and objective in nature)). Moreover, the trial judge's findings of fact support his ruling that Missouri's expectation of privacy in the Sibert home was reasonable. *See Brockman*, 339 S.C. at 66, 528 S.E.2d at 666 (an appellate court must affirm if there is *any evidence* in the record supporting the trial judge's ruling). Therefore, we reverse the court of appeals' decision.

### CONCLUSION

For these reasons, we reverse the court of appeals' decision and hold that Missouri had a reasonable expectation of privacy in the Siberts' apartment. Missouri is therefore entitled to challenge the search under the Fourth Amendment. In addition, because we held in a prior decision that the search warrant executed in this case was invalid, the evidence seized must be suppressed and Missouri's conviction vacated.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

guests present for social reasons and present for some time less than an overnight stay.