690 S.E.2d 73

**J. Lamar KOLLE, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 26771.**

Supreme Court of South Carolina.

Submitted Oct. 21, 2009.

Decided Feb. 16, 2010.

Rehearing Denied March 24, 2010.

582

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Daniel E. Grigg, of Columbia, for Petitioner.

Appellate Defender Robert M. Pachak, of Columbia, for Respondent.

Justice BEATTY.

This Court granted the State's petition for a writ of certiorari to review the post-conviction relief (PCR) judge's order granting J. Lamar Kolle a new trial following his plea of guilty to trafficking in cocaine in an amount greater than 28 grams but less than 100 grams. We affirm.

## FACTS

On July 12, 2003, Officer Vincent Canfora received a phone call at approximately 11:30 p.m. concerning a complaint about loud music at the Myrtle Beach apartment where Kolle was staying. When he arrived between 11:45 p.m. to 12:00 a.m., Officer Canfora heard music coming from inside the apartment. As he knocked on the door, he observed "fresh damage" to the door, which appeared to be forced entry marks. Although the door seemed to be open, Officer Canfora knocked on it for approximately five to ten minutes while announcing he was a police officer. Receiving no response, he then knocked on the window beside the door. Because there were lights on in the apartment and no one answered his knocks, Officer Canfora "presumed that there may be something wrong inside the apartment ... that somebody was in the residence, maybe injured or incapacitated."

Based on his assessment of the situation, Officer Canfora called for a back-up officer to assist him with making an entry into the apartment. Lance Corporal Steven Atwood responded to the scene within three minutes of receiving Officer Canfora's call. The two officers then decided to enter the apartment by pushing on the door. Upon entering, the officers announced themselves as police officers and asked if anyone inside the residence needed assistance. Once inside, the officers conducted a protective search of the residence. During this protective search, Officer Canfora observed a small plate with a moderate amount of what appeared to be cocaine, partially covered by a saltine cracker, drying under an elevated oscillating fan. The officers also noticed a large steel press used for processing and manufacturing cocaine as well as other materials commonly used for processing or cutting cocaine. Finding no one in the apartment, the officers seized the small amount of cocaine-like substance and returned to the police department. After the substance field-tested positive for cocaine, Officer Canfora completed an application for a search warrant for the apartment based on the cocaine seized during the initial entry. According to Officer Canfora, he and another narcotics officer prepared the warrant at approximately 12:30 a.m.

After obtaining the search warrant from a municipal judge, Officer Canfora returned to the residence at approximately 12:43 a.m. with his lieutenant and another narcotics officer in order to execute the warrant. As the officers knocked on the door, Sharon Hakes opened the door. Once inside, the officers presented Hakes, Jessica Everhart, and Kolle with a copy of the search warrant. During the subsequent search, Officer Canfora discovered a bag of flour in a kitchen cabinet that contained approximately sixty-three grams of cocaine.

As a result, the officers arrested Kolle, Hakes, and Everhart.[1] Shortly thereafter, the officers also arrested Willis Holmes, the resident named on the apartment lease.

Subsequently, the Horry County grand jury indicted Kolle for trafficking in cocaine in an amount of more than 28 grams but less than 100 grams. In response to the charge, Kolle's public defender filed a discovery motion with the solicitor's office. Ultimately, this requested information was turned over by the solicitor's office to plea counsel, a private attorney retained by Kolle. In addition to the public defender's discovery motion, plea counsel filed a motion in which he requested "any and all search warrants applied for and a copy of all dispatch logs from the North Myrtle Beach Police Department."

Based on his review of the discovery information, plea counsel moved to suppress evidence seized pursuant to the search warrant. After a hearing, the trial judge denied this motion on the ground there were exigent circumstances to justify the officers' entry into the apartment. Additionally, the judge ruled the officers saw the cocaine in plain view. As a result, the judge concluded the search was valid.

On the day of this ruling, Kolle pled guilty to trafficking cocaine in an amount greater than 28 grams but less than 100 grams. The plea judge sentenced Kolle to seven years in prison.

Kolle did not appeal his plea or sentence. Four months after the plea proceeding, Kolle filed a PCR application. In this application, Kolle alleged he was being held in custody

---

1. Hakes and Everhart gave statements in which they identified Kolle as the primary participant in the drug activity.

unlawfully based on the following grounds: the trafficking charge arose out of an unlawful search and seizure; the plea judge lacked subject matter jurisdiction due to an invalid indictment; and he did not receive all of the discovery materials that he was entitled to pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Underlying these allegations, Kolle primarily contended plea counsel was ineffective in failing to: procure certain discovery materials; thoroughly advocate the suppression of the drug evidence; properly advise him regarding plea negotiations and potential sentences; and properly inform him of his right to appeal.

The PCR judge held a hearing on Kolle's application. At this hearing, plea counsel testified regarding the chronology of his representation of Kolle. When he agreed to represent Kolle, plea counsel had been practicing law for approximately three years and had not yet represented a client with a felony charge.

At the onset of his representation, plea counsel received discovery materials from the solicitor's office that had been previously requested by Kolle's public defender. Although plea counsel had limited discovery material, he believed the search that led to Kolle's charge was improper, particularly the lack of exigent circumstances. In turn, plea counsel filed a motion to suppress the drug evidence.

In recounting the suppression hearing, plea counsel conceded that he did not point out the discrepancies between the officers' testimony and the documentary evidence, which included the incident reports, the search warrant, and the police call logs. Specifically, PCR counsel established that plea counsel failed to question the officers regarding the following time discrepancies: the call/dispatch log indicated the loud music complaint was received at 12:43 a.m.; Officer Canfora arrived at the apartment at 12:48 a.m.; the search warrant appears to indicate it was issued at 12:01 a.m. and executed at 12:43 a.m. Plea counsel admitted that he did not have this documentary evidence in his file. He further acknowledged that he never requested the lab report or the chain of custody

report regarding the cocaine that was seized pursuant to the search warrant.[2]

In terms of plea negotiations, plea counsel testified that prior to the suppression hearing the State offered Kolle a sentence of ten years suspended upon the service of five years with three years' probation.[3] Plea counsel admitted that he told Kolle the offer was not "a good deal," but that it would remain open even after the suppression hearing. He acknowledged that the offer did not remain open and was significantly less than the seven-year sentence Kolle received.

At the beginning of his testimony, Kolle reiterated his allegations of ineffective assistance of counsel. In explaining his dissatisfaction with plea counsel's representation, Kolle outlined his version of the facts and primarily argued that the search warrant and subsequent seizure of the cocaine was improper given there were no exigent circumstances for the initial entry. Kolle contended that the evidence could have been suppressed had plea counsel: thoroughly investigated the case; filed a more inclusive discovery motion; interviewed the other co-defendants; pointed out during the suppression hearing the discrepancies between the call logs, the incident reports, and the search warrant; and identified errors in the chain of custody evidence form that was prepared for the cocaine.

In terms of his decision to plead guilty, Kolle claimed he felt under duress to accept the plea because plea counsel was not prepared for trial. Additionally, Kolle asserted plea counsel provided incorrect information regarding the State's initial plea offer. Specifically, Kolle contended plea counsel told him the offer was not a good deal and he should not accept it until after the suppression hearing. Because he did not have accurate advice or information prior to the plea, Kolle claimed his decision to plead guilty was not knowing and voluntary.

On cross-examination, Kolle acknowledged that he had admitted his guilt regarding the trafficking in cocaine charge at

---

2. Through another witness, PCR counsel attempted to establish that there was a ten-day "break" in the chain of custody for the cocaine.

3. Kolle's PCR counsel played a tape of a conversation between Kolle and plea counsel that substantiated this plea offer.

the plea proceeding as well as during his testimony at co-defendant Holmes's trial. Kolle, however, explained that he pled guilty and expressed satisfaction with plea counsel's representation because he lacked the necessary information to raise any challenge during the plea proceeding.

Following the hearing, the PCR judge granted Kolle's application and ordered a new trial. In reaching this conclusion, the PCR judge found that plea counsel's failure to point out the discrepancies between the officers' testimony and the documentary evidence constituted ineffective assistance. Specifically, the PCR judge believed that had plea counsel raised these issues at the suppression hearing, this information "would have resulted at the very minimum suppressing the evidence gained in the search warrant to sustain the evidence on the Trafficking charge."

Additionally, the PCR judge found plea counsel was deficient in failing to properly advise Kolle regarding the State's plea offer. Because plea counsel misadvised Kolle not to plead guilty prior to the suppression hearing, which in turn resulted in the withdrawal of the State's negotiated sentence, the PCR judge found that these facts "undermined the willful and voluntary nature of [Kolle's] plea."

Finally, the PCR judge found plea counsel would have discovered exculpatory evidence regarding the search warrant and radio/dispatch logs had he properly prepared for trial. The PCR judge believed "such discovery would have reversed the outcome." Thus, the judge held that plea counsel's lack of preparation satisfied the standard of deficiency under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ultimately, the judge concluded that this deficient performance "deprived [Kolle] of adequate representation and that a different verdict from a verdict of guilty could have been a logical conclusion."

The State filed a motion for reconsideration pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. In a summary order, the PCR judge denied the State's motion.

This Court granted the State's petition for a writ of certiorari to review the PCR judge's order.

## DISCUSSION

The State contends the PCR judge erred in finding that Kolle did not freely, knowingly, and voluntarily enter his guilty plea. In support of this contention, the State asserts that plea counsel was not deficient in his representation of Kolle given he: met with Kolle on multiple occasions prior to the entry of the plea; investigated the case; requested discovery; and thoroughly challenged the search which precipitated Kolle's arrest for the drug charge.

Even if counsel's performance was deficient, the State claims Kolle failed to establish that he was prejudiced. The State asserts that Kolle lacked standing to challenge the legality of the search and seizure, thus, negating Kolle's primary basis for contesting the drug charge. Additionally, the State argues that Kolle's guilty plea "must stand due to the overwhelming evidence of his guilt."

A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007).

In a PCR proceeding, the applicant bears the burden of establishing that he or she is entitled to relief. *Caprood v. State,* 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). "A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial." *Rolen v. State,* 384 S.C. 409, 413, 683 S.E.2d 471, 474 (2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." *Johnson v. State,* 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997). "Plea counsel is ineffective within the meaning of the Sixth Amendment only when the applicant satisfies both requirements." *Stalk v. State,* 383 S.C. 559, 561, 681 S.E.2d 592, 593 (2009).

"In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing." *Suber v. State,* 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007). "Specifically, the voluntariness of a guilty plea is not determined by an examination of a specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea, and also from the record of the PCR hearing." *Roddy v. State,* 339 S.C. 29, 33, 528 S.E.2d 418, 420 (2000). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

In reviewing the PCR court's decision, an appellate court is concerned only with whether any evidence of probative value exists to support that decision. *Smith v. State,* 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006). We will uphold the findings of the PCR court when there is any evidence of probative value to support them, and will reverse the decision of the PCR court when it is controlled by an error of law. *Suber,* 371 S.C. at 558–59, 640 S.E.2d at 886. "This Court gives great deference to the post-conviction relief (PCR) court's findings of fact and conclusions of law." *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005).

## I.

As a threshold matter, we find the State's argument regarding Kolle's lack of standing was not preserved for this Court's consideration. Based on our review of the record, the State did not raise this claim at the PCR hearing but did so only in its motion for reconsideration. Therefore, this argument is not properly before the Court. *See Palacio v. State,* 333 S.C. 506, 514 n. 7, 511 S.E.2d 62, 66 n. 7 (1999) (concluding issue that was neither raised to nor ruled upon by the PCR court was not preserved for appellate review); *see also Johnson v. Sonoco Prods. Co.,* 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009) (recognizing that an issue may not be raised for the first time in a motion to reconsider).

■ Even if properly preserved, we disagree with the State's assertion that Kolle lacked standing to challenge the search and seizure which precipitated his arrest for the drug charge. The fact that Kolle did not own or lease the apartment that was searched does not negate his standing to challenge the search and subsequent seizure. Following the decisions of the United States Supreme Court, this Court has definitively held that an overnight guest has a reasonable expectation of privacy, the legal prerequisite to confer standing on an individual. *See State v. Missouri*, 361 S.C. 107, 603 S.E.2d 594 (2004) (citing *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) and concluding that defendant, who on several occasions in the past and the occasion in question stayed at the searched apartment, had a reasonable expectation of privacy to challenge the search and seizure which resulted in his charge of trafficking in crack cocaine). Here, there was evidence that Holmes, the person who leased the apartment, befriended Kolle and permitted him to stay for an extended period of time at the residence. Accordingly, Kolle had a reasonable expectation of privacy in the apartment and, thus, had standing to challenge the search.

## II.

Finding that Kolle had standing, we address the remainder of the State's arguments.

A determination of the core issue of ineffective assistance of counsel requires a two-part assessment. We find it is necessary to determine whether plea counsel was ineffective: (1) with respect to Kolle's fundamental decision to plead guilty; and (2) regarding Kolle's decision to reject the State's initial plea offer and enter a plea without a negotiated sentence.

## A.

■ Cognizant of this Court's recent pronouncements regarding guilty plea challenges and its standard of review, there is evidence to support the PCR judge's determination that plea counsel was ineffective in advising Kolle to plead guilty.

Initially, we agree with the PCR judge's decision that plea counsel was deficient in failing to procure pertinent discovery

materials, in particular the call/dispatch logs and the search warrant. If plea counsel had these materials, he could have effectively cross-examined the officers at the suppression hearing and pointed out the time discrepancies and the following additional discrepancies: (1) the arrest warrant affidavit, the incident reports, and the search warrant refer to the drug evidence as crack cocaine as opposed to powder cocaine; and (2) the investigative report and the affidavit in support of the search warrant do not reference the "fresh damage" or "forced entry" to the apartment door as testified to by Officer Canfora to justify the exigent circumstances for entry into the apartment. Had plea counsel adequately attacked the credibility of the officers, there is a reasonable probability this would have influenced the trial judge's decision regarding the existence of exigent circumstances, *i.e.,* affected the outcome of the suppression motion.

Moreover, if plea counsel truly believed the suppression issue was meritorious, he could have advised Kolle to proceed to trial and, if convicted, challenge the denial of the suppression motion on direct appeal.

## B.

Given there is evidence to support the PCR judge's finding that plea counsel was ineffective with respect to his representation regarding the suppression hearing and, in turn, Kolle's decision to plead guilty, we need not address the remaining issue.

However, in the interest of thoroughness, we review the remaining issue of whether plea counsel was ineffective in advising Kolle to reject the State's initial plea offer and plead guilty without a negotiated sentence.

We find plea counsel was deficient in advising Kolle that the State's initial plea offer was not a "good deal" and misinforming Kolle that the offer would remain open until after the suppression hearing.

Clearly, the State's offer of a sentence of ten years suspended on the service of five years with three years'

probation was significantly better than the seven to twenty-five-year sentence Kolle faced for the trafficking charge.[4] Moreover, plea counsel advised him not to plead guilty until after the suppression hearing at which time the State withdrew the plea offer. Had Kolle known that the State would withdraw this offer after the suppression hearing, he may have decided to accept it and received a lower sentence. *Cf. Davie v. State*, 381 S.C. 601, 675 S.E.2d 416 (2009) (concluding petitioner proved ineffective assistance of counsel where plea counsel failed to communicate the State's proposed plea offer which was a significantly lower sentence than petitioner would have accepted had it been communicated).[5]

---

**4.** In making this offer, the State would have reduced Kolle's indicted charge to trafficking in cocaine in an amount greater than ten grams but less than twenty-eight grams, which would not constitute a violent offense. S.C.Code Ann. § 44–53–370(e)(2)(a)(1) (2002) (providing for sentence of a term of imprisonment of not less than three years nor more than ten years for a first offense).

**5.** The dissent appears to contend that a defendant may never raise a claim of ineffective assistance of counsel following the entry of a guilty plea if he expressed satisfaction with his attorney during the plea colloquy. An expression of satisfaction with plea counsel is necessarily conditional. The extent of satisfaction is dependent upon the attorney's diligence and degree of information shared with the client. Although a plea of guilty may preclude certain PCR claims, it would not preclude those that directly involve the voluntariness and knowledge with which the guilty plea was made. Here, Kolle entered his guilty plea without the benefit of all exculpatory information or knowledge that the State's initial plea offer would not remain open. Because Kolle was unaware of this information, his claim of ineffective assistance of counsel clearly impinged upon the voluntariness and knowledge with which he entered his plea. Accordingly, we find this case constitutes a valid collateral attack of a guilty plea. *See Davila v. United States*, 258 F.3d 448, 451 (6th Cir.2001) (considering question of whether a plea agreement that waives the right to file for post-conviction relief is enforceable when the petition claims ineffective assistance of counsel and holding that "[w]hen a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring[ing] a claim of ineffective assistance of counsel"); *Watts v. State*, 248 S.W.3d 725, 729 (Mo.Ct.App.2008) ("Where ... there is a negotiated plea of guilty, a claim of ineffective assistance of counsel is immaterial except to the extent that it impinges upon the voluntariness and knowledge with which the guilty plea was made." (citation omitted)); *cf. Spoone v. State*, 379 S.C. 138, 665 S.E.2d 605 (2008) (concluding appellate rights and post-conviction review may be waived

## CONCLUSION

Based on the foregoing, we find there is evidence to support the decision of the PCR judge. Accordingly, the order granting Kolle's PCR application is

**AFFIRMED.**

WALLER, J., concurs. PLEICONES, J., concurring in a separate opinion.

KITTREDGE, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

Justice PLEICONES, concurring.

I agree with the majority that we must affirm the post-conviction relief (PCR) judge's order granting respondent PCR. Our scope of review is limited to whether there is any evidence of probative value in the record to support the PCR judge's findings, *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989), and we give great deference to the PCR judge's credibility determinations. *Drayton v. Evatt,* 312 S.C. 4, 430 S.E.2d 517 (1993). This deference requires that we accept the PCR judge's finding that a witness is credible even where the PCR testimony is directly refuted by the trial or guilty plea record. *See Solomon v. State,* 313 S.C. 526, 443 S.E.2d 540 (1994). Given our limited scope of review, and the deference accorded the PCR judge's credibility determinations, I concur in the result reached by the majority here.

Justice KITTREDGE, dissenting.

I respectfully dissent. I vote to reverse and reinstate the guilty plea and sentence.

The plea judge, the Honorable Steven H. John, conducted a thorough and textbook guilty plea. J. Lamar Kolle pled guilty freely and voluntarily, and acknowledged satisfaction with plea counsel.

THE COURT: Now, you are here with your attorney ... is that correct?

by a knowingly and voluntarily entered guilty plea pursuant to a written plea agreement).

DEFENDANT KOLLE: Yes, sir.

THE COURT: Have you told him everything you need to tell him about this case?

DEFENDANT KOLLE: I believe so, sir.

THE COURT: All right, sir. Have you had enough time to talk to him?

DEFENDANT KOLLE: Yes, sir.

THE COURT: Do you need any more time to talk to him?

DEFENDANT KOLLE: No, sir.

THE COURT: Has he done everything that you expected of him, that you wanted him to do to try to help you in this case?

DEFENDANT KOLLE: Yes, sir.

THE COURT: Are you satisfied with his representation?

DEFENDANT KOLLE: Yes, sir.

THE COURT: Any complaints about his representations?

DEFENDANT KOLLE: No, sir.

The guilty plea colloquy, including allocution, revealed the following facts. In the summer of 2003, Kolle and "ladies" traveled from Ohio to North Myrtle Beach, South Carolina. Kolle and his lady friends were befriended by Willis Holmes, who invited the group "to stay at his house and save on the hotel bill."

The cocaine was found in Holmes's residence. According to the plea allocution:

DEFENDANT KOLLE: I let Mr. Willis Holmes know what me and the ladies had in our possession, and he said that wouldn't be an issue, but he would prefer that it stayed outside of the house.

It stayed outside of the house, in my vehicle, for the first three or four days, and then once Mr. Holmes started selling it and purchasing it, it came in the house, and he knew that because he had asked for some in the house, and received it in the house from me, and it stayed in the house from that time on. I demonstrated the machine to Mr. Holmes also, so he was well aware of what was going on.

THE COURT: All right, sir.

Solicitor, anything further that you would like to ask Mr. Kolle at this time?

SOLICITOR: Your Honor, I would ask that—in his allocution he indicated the "stuff." What would that "stuff" be?

THE COURT: Mr. Kolle.

DEFENDANT KOLLE: The cocaine—

THE COURT: All right.

DEFENDANT KOLLE: —And the tools.

THE COURT: And the paraphernalia that was seized by the police; is that correct?

DEFENDANT KOLLE: Yes sir.

THE COURT: All right, sir. And the weight that—of the cocaine that was seized, in your estimation, that was a correct amount as far as the weight at the time that it was seized, as best you could tell?

DEFENDANT KOLLE: I believe it is a little heavy, and if you review the documents there are several different amounts that the police have come up with, and that's going to be due to moisture and sweating, so I would—

THE COURT: All right. But it's no question in your mind it was certainly a good deal bit more than twenty-eight grams?

DEFENDANT KOLLE: Yes.

THE COURT: All right. Now, Mr. Kolle, just a second. I just have one or two other questions for you. Regarding the answers that you have given me here today, are they the truth?

DEFENDANT KOLLE: Yes.

THE COURT: And did anybody tell you, or give you the answers that you have given to the Court, or are they your answers?

DEFENDANT KOLLE: They are my answers.

Following the trial of Holmes, Kolle appeared for sentencing before Judge John. Kolle recited the reasons he believed he was a good candidate for probation:

DEFENDANT KOLLE: I just wanted to let the Court know that I was offered some pleas that were a lesser sentence than this, and it was not the fact that I was not

trying to accept responsibility for the crime, but as informed by my attorney, he felt that it was an illegal search and seizure, so that's why I took it to this point, and I feel like I kind of lost out a little bit because of that, and I just want to say that I do accept responsibility for what happened, but in the same light, these girls, they were of equal responsibility. They have known what's gone on, and I think that is apparent by their own statement. They received a hundred day plea and some probation. I'm not—I feel that I should pay for my crime, but however, I have seven kids which, you know what I'm saying, are in dire need of my support, and I just request that the Court have mercy on me and grant me probation. I successfully have completed parole in Ohio when I—on my prior offense, with no problems, and I would not be a threat to society, and I feel that I'm a good candidate for probation.

THE COURT: I'm going to look at one thing first, before I impose a sentence in this matter. . . . [N]o probation is possible regarding this particular matter. The court does feel that the minimum sentence should be imposed in this offense that is allowable by law, and that would be the sentence of seven years. That is the sentence in this particular matter.

According to Kolle's PCR testimony, when he pled guilty he was aware of plea counsel's alleged deficient representation and repeatedly complained to counsel about it. For example, Kolle testified that he and counsel "actually debated about this beforehand"; Kolle "continued to argue with [counsel] and he continued to try not to do it" when counsel apparently failed to investigate the case as instructed by Kolle; and Kolle testified that "[counsel] didn't investigate my case whatsoever or follow my instructions concerning the investigation of my case." [6]

Kolle's PCR testimony stands in stark contrast to his guilty plea testimony. Presumably, Kolle lied to the plea judge in stating he was satisfied with counsel and had no complaints. It is my view that a guilty plea is not rendered involuntary where, as here, a defendant knowingly testifies falsely at the

---

6. Moreover, Kolle fancies himself as a legal expert, as reflected in his lecture-like testimony to the PCR court on the laws of search and seizure and *Brady*.

guilty plea proceeding.[7] I would not grant a PCR applicant relief under such circumstances. I find no evidence to support the PCR court's decision and would reverse the grant of PCR.

TOAL, C.J., concurs.

---

7. The majority opinion states that I "appear[ ] to contend that a defendant may never raise a claim of ineffective assistance of counsel following the entry of a guilty plea if he expressed satisfaction with his attorney during the plea colloquy." I contend no such thing. I contend that a defendant should not be permitted to successfully collaterally challenge a guilty plea on the basis of an involuntary plea tied to a claim of deficient representation where: (1) the alleged deficient representation was known to the defendant at the time of the guilty plea; and (2) the defendant knowingly testified falsely at the plea proceeding concerning plea counsel's representation.