704 S.E.2d 344

**The STATE, Respondent,**

v.

**Stephen Corey BRYANT, Appellant.**

**No. 26906.**

Supreme Court of South Carolina.

Heard Nov. 30, 2010.

Decided Jan. 7, 2011.

Rehearing Denied Feb. 2, 2011.

Chief Appellate Defender Robert M. Dudek and Senior Appellate Defender Joseph L. Savitz, III, both of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.

Justice PLEICONES.

This is an appeal from a capital plea and sentencing. The opinion consolidates the appeal and the mandatory proportionality review. We affirm.

## FACTS

Appellant began a crime spree with a first degree burglary on October 5, 2004. By the time the spree ended eight days later, appellant had committed three murders, assault and battery with intent to kill (ABIK), two more burglaries, and arson. While incarcerated awaiting trial, appellant threatened a correctional officer and subsequently attacked and seriously injured another.

Appellant "cased" isolated rural homes looking for vulnerable victims. He would appear midday at homes, claiming to be looking for someone or having car trouble. Appellant burglarized Dennis's home office a day after visiting Dennis's home. He next broke into Ammons' home while no one was there, cutting the phone wires and stealing a pistol and ammunition. Later that same day he shot victim Brown, who was fishing along the Wateree River, in the back.

On October 9, appellant killed an acquaintance (victim Gainey), leaving his body on a rural road, then stole electronics and an aquarium from Mr. Gainey's trailer before setting it on fire. Two days later, appellant went to victim Tietjen's home, shot him nine times, and looted the house. Appellant answered several calls made to Mr. Tietjen's cell phone by Mr. Tietjen's wife and daughter, telling both of them that he was the "prowler" and that Mr. Tietjen was dead. He burned Mr. Tietjen's face and eyes with a cigarette. Appellant left two notes on paper and scrawled a message on the wall: "victim number four in two weeks, catch me if you can." On another wall the word "catch" and some letters were written in blood.

Two days later appellant met victim Burgess at a convenience store around 4:30 am. They left together, and less than two hours later, a hunter found Mr. Burgess dead from gunshot wounds on a road bed in a rural area.

Appellant pled guilty to these offenses, in chronological order by date of offense:

- October 5, 2004: Second degree burglary (Dennis);
- October 8, 2004: First degree burglary (Ammons);
- October 8, 2004: ABIK (Brown);
- October 9, 2004: Murder, first degree burglary, second degree arson (Gainey);
- October 11, 2004: Murder, armed robbery, possession of a stolen handgun (Tietjen);
- October 13, 2004: Murder (Burgess);
- March 9, 2005: Threatening the life of a public employee (Correctional Officer Jones); and
- October 13, 2005: ABIK (Correctional Officer Justice).

Appellant received a death sentence for the Tietjen murder, the aggravating circumstance being armed robbery, and received concurrent life sentences for the two other murders (Gainey and Burgess) and the two first degree burglaries (Ammons and Gainey), thirty years for armed robbery (Tietjen), twenty-five years for the second degree arson (Gainey), twenty years for the two ABIKs (Brown and Justice), fifteen years for the second degree burglary (Dennis), five years for possessing a handgun (Tietjen), and thirty days for threatening (Correctional Officer Jones).

Appellant was unquestionably a deeply troubled individual who was first institutionalized in the South Carolina Department of Juvenile Justice (DJJ) when he was eleven years old, and whose elementary school records showed low intelligence and placement in emotionally handicapped classes. He had sought mental health counseling in September 2004 before beginning this crime spree. After his arrest in October 2004, he was diagnosed with Post–Traumatic Stress Disorder (PTSD) based on childhood sexual abuse by family members, Attention Deficit Disorder (ADD), and chronic depression. The ADD and depression diagnoses had first been made when appellant was incarcerated in DJJ. Appellant also regularly abused marijuana sprayed with RAID insecticide, methamphetamine, and Benadryl.

Appellant called his paternal grandmother as a mitigation witness. She testified that in August 2004 appellant, then aged twenty-three, confided to her and her daughter, Terry, appellant's aunt, that he had been sexually abused beginning around the age of 6 or 7 by his paternal grandfather, his mother's brother, and an older half-brother. Appellant was extremely agitated, and his grandmother and Aunt Terry called a deputy and received information on getting help for appellant as a sexual abuse victim. Appellant sought help from two agencies before the spree began.

Appellant next called Aunt Terry as a witness. She confirmed her mother's testimony about appellant's August 2004 confession. During Aunt Terry's direct examination, the following exchange occurred:

Q. Okay. And what is your relationship to [appellant's] grandfather William Edward Bryant?

A. He's my biological father.

Q. Okay. And did you ever have any problems specifically with him?

A. Yes, sir.

SOLICITOR: Your Honor, I object to the relevance of any problems she may have had with family members. This is about [appellant].

THE COURT: Sustained.

MR. HOWELL: Your Honor, I think these problems are of the same nature. I think it goes to the same person committing them and—

THE COURT: It may go to this but it has no relevance as to [appellant]. I mean, you can testify as to [appellant].

MR. HOWELL: Your Honor, we feel it adds credibility to what [appellant] has said about the same type molestation.

THE COURT: And she can testify as to what she may have observed, if she has any personal knowledge, about any abuse to [appellant], but I don't think it goes to—it's not relevant to [appellant's] case as to what abuse this grandfather may have inflicted on others. It's not a question of how extensive his abuse but it's the relevancy to this defendant.

MR. HOWELL: Okay.

BY MR. HOWELL:

Q. Let me ask you this. What kind of relationship did you have? Were you close to your father at all?

A. No. I was, as a child, for a time and then things started happening and—

SOLICITOR: Your Honor, again, I—

THE COURT: Sustained.

## ISSUE

Whether the trial judge erred in refusing to allow Aunt Terry to testify that she had been sexually abused by appellant's grandfather?

## ANALYSIS

■ Appellant contends that the trial judge committed reversible error in refusing to allow Aunt Terry to testify that she was sexually abused by her father. We find no abuse of discretion here. *State v. Winkler*, 388 S.C. 574, 698 S.E.2d 596 (2010).

Appellant's childhood sexual abuse, as well as that inflicted upon appellant's aunt, were part of the foundation upon which

appellant's mental health expert and his social history expert based their opinions. Both experts testified, without objection, to these opinions. Accordingly, whether the aunt should have been allowed to testify directly to her abuse is irrelevant to appellant's mitigation case. The purpose of Aunt Terry's testimony was to establish intrafamilial sexual abuse. Since appellant's experts were permitted to testify to this abuse, appellant was not prejudiced by the trial court's decision to sustain the solicitor's objection. *Cf. State v. Mercer,* 381 S.C. 149, 672 S.E.2d 556 (2009) (no reversible error where excluded evidence was presented through other witnesses). Accordingly, even if that ruling were error, appellant could not demonstrate prejudice warranting reversal. *E.g., State v. Wyatt,* 317 S.C. 370, 453 S.E.2d 890 (1995).

## PROPORTIONALITY REVIEW

■ We have conducted the proportionality review required by S.C.Code Ann. § 16–3–25(C) (2003), and find the capital sentence imposed here is not the result of passion, prejudice, or other arbitrary factor. Further, we find the sentence here is neither arbitrary nor capricious. *E.g. State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001) (capital sentence for murder in commission of armed robbery).

## CONCLUSION

Appellant's convictions and sentences are

**AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.